UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES SOTO, Y44134                )
                                    )
                    Petitioner,     )        No. 1:22-CV-04538
                                    )
        v.                          )
                                    )        Judge Edmond E. Chang
DARREN GALLOWAY, Warden,            )
                                    )
                    Respondent.     )

MEMORANDUM OPINION AND ORDER

Charles Soto seeks habeas relief from his state court conviction. 28 U.S.C. § 2254; R. 1, Habeas Pet.[1] Soto presents 12 claims for relief on habeas review. *Id.* For the reasons that follow, Soto's habeas petition is denied, and no certificate of appealability shall issue from this Court.

## I. Background

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Soto has not provided clear and convincing evidence to rebut the presumption of correctness, so this factual background is taken from the Illinois Appellate Court's findings.

---

[1]Under Civil Rule 25(d), the current Warden of Shawnee Correctional Center, Darren Galloway, is substituted for the former Warden as the named defendant. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241. Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

## A. The Charges

In 2012, Charles Soto sexually assaulted then six-year-old T.L.[2] R. 15-1, State's Resp. Exh. 1 at 2; *People v. Soto*, 201 N.E.3d 91, 98 (Ill. App. Ct. 2022). Some six years later, in 2018, Soto was charged with predatory criminal sexual assault of a child and aggravated sexual abuse. *Id.* Soto pled not guilty to all charges and his case proceeded to a jury trial in 2020. *Id.* at 97.

## B. Procedural History

### 1. Pretrial Evidentiary Decisions

Before trial, the trial court made various pretrial rulings. *Soto*, 201 N.E.3d at 98–102. Among other things, the trial court (1) granted the State's motion to introduce other-crimes evidence that Soto had previously sexually assaulted his daughter, J.S., in a similar way that he allegedly assaulted T.L; (2) granted the State's motion to introduce statements that T.L. made during a foster-care intake interview at the Child Advocacy Center; (3) excluded evidence that Soto had taken pornographic photos of T.L. because he was not charged with that offense; (4) denied Soto's motion to dismiss the case due to prejudicial effects of the six-year delay between the offense and indictment; (5) denied Soto's motion to take an evidence deposition[3] of the

---

[2]In the state court proceedings, the two minors in this case were referred to using a pseudonym. Because they are victims of sexual assault, and were minors at the time of the offenses, it is proper to use pseudonyms. *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997). So the Court likewise addresses the minors by pseudonym. It is worth noting, however, that the parties failed to redact the minors' names in their exhibits. The Petitioner's counsel also used the minors' names in the briefing.

[3]Under Illinois law, a party may move to take an "evidence deposition," which is a deposition used to elicit testimony that may be introduced as direct evidence during trial if

physician who examined T.L. at the Child Advocacy Center; and (6) denied Soto's motion to prevent T.L. from attempting to identify him during trial. *Soto*, 201 N.E.3d at 98–102.

## 2. Trial

At trial, the State called four witnesses: Soto's ex-wife, Johanna R.; Soto's daughter, J.S.; the victim, T.L.; and a nurse that examined T.L. at St. Mary's Hospital several months after the alleged assault. *See id.* at 103–07.

Johanna R., Soto's ex-wife, testified about her marriage with Soto and the status of their relationship at the time of trial. *Id.* at 103–04. She explained that Soto worked as a security guard at the El Rincon Clinic in Chicago, but did not provide other details about his employment there. *Id.* at 104. Johanna also told the jury about reporting to the police in 2014 that Soto had molested their daughter, J.S. *Id.* at 104. J.S. later testified about the details of the assault that she endured. *Id.* at 104–05.

Next, T.L. was put on the stand. She testified that she sometimes spent time at the El Rincon Clinic. *Id.* at 105. She explained that would go with her mother to the clinic because that is where her mother received treatment and because the clinic had a play area for children. *Id.* at 105–06. T.L. testified that she remembered one security guard working at the clinic named Charlie Soto, and that her mother spoke to him one time. *Id.* at 105. On cross-examination, T.L. described her attacker as "a tall, chubby, balding Hispanic man with glasses and a beard, but no mustache or

---

the deponent (a) is unavailable at the time of trial or (b) a physician or surgeon. Ill. Sup. Ct. R. 212(b).

tattoos." *Id.* at 106. T.L. did not directly identify Soto as her attacker at trial (nor did she identify him in a photo array or lineup before trial), though the description that she gave of her attacker matched Soto's appearance. *See Soto*, 201 N.E.3d at 105.

T.L. went on to recount the day of the incident. She explained that one time when she went to the El Rincon Clinic with her mother, T.L.'s parents took her to Soto's van. *Id.* at 106. Soto drove T.L. to his apartment in the Humboldt Park neighborhood of Chicago. *See id.* At some point, T.L. had been told that she was having a playdate with Soto's two daughters, but when the two arrived at Soto's apartment, his daughters were not there and they were alone. *Id.* Soto brought T.L. to a room with pink wallpaper and made her change into his daughter's clothes. *Id.* After T.L. changed, Soto told her that they would play a game. *Id.* Soto blindfolded T.L. with a bandana and guided her to touch him while asking her what she thought she was touching. *Id.* He also assaulted her, but T.L. told Soto that it hurt, and she wanted it to stop, but he did not stop. *Id.* T.L. testified that she was 14 years old at the time of trial and six years old at the time of the assault. *Id.* at 105.

T.L. later told her mother about the assault. *Id.* at 106. Her mother brought her to the hospital, where T.L. was examined by a physician and a nurse. *Id.* A few days after, T.L.'s mother brought her to the Children's Advocacy Clinic, where someone interviewed T.L. about the assault. *Id.*

The parties stipulated to the admission of a redacted 2012 video interview of T.L. *Id.* at 107. T.L. watched the video of her interview shortly before trial. *Id.* at 106. The social worker who examined T.L. testified that the video accurately reflected the

interview; testified that in the 2012 interview, T.L. had identified her assailant as "Charlie the bodyguard"; and testified about details of the assault that T.L. had earlier relayed to the social worker. *Soto*, 201 N.E.3d at 107–08. During T.L.'s trial testimony, she was questioned about the inconsistencies between her trial testimony and the interview. *Id.* at 106–07. When counsel asked T.L. whether she had reported in her interview where she was sitting during the assault, T.L. replied, "When I was sitting on the bedroom that is when he took a picture of my front part and then he put—so—he told me that—I'm sorry, can you repeat the question?" *Id.* at 107. Because the answer referred to excluded evidence—that is, the evidence of taking pornographic photos—the trial court immediately struck the statement even before any objection from either party and told the jury to disregard the answer. *Id.*

Soto did not present any evidence. Instead, his counsel argued that the State failed to prove the crimes charged beyond a reasonable doubt. *Id.* at 109. The jury found Soto guilty of predatory criminal sexual assault of a child and aggravated sexual abuse. *Id.* at 111. He was sentenced to 14 years in prison, which he is still serving. *Id.* at 97.

### 3. Direct Appeal

Soto raised nine issues on direct appeal to the Illinois Appellate Court. He argued there (and argues here too) that (1) the evidence failed to prove his guilt beyond a reasonable doubt; (2) the prosecution failed to disclose that T.L.'s mother had a prior felony conviction; (3) the prosecution failed to disclose that T.L. would be unable to visually identify Soto at trial; (4) the trial court erred when it denied Soto's motion to

prevent T.L. from attempting to identify Soto at trial; (5) the trial court erred when it did not dismiss Soto's charges due to the six-year preindictment delay; (6) the trial court erred when it denied a mistrial based on T.L.'s testimony (despite the motion *in limine* decision) that Soto photographed her during the assault; (7) the trial court erred when it denied Soto's motion to take an evidence deposition of the physician who examined T.L. months after the assault; (8) the trial court erred when it admitted T.L.'s prior statement; and (9) the trial court lacked jurisdiction because the prosecution failed to prove that the assault occurred in Illinois. *Soto*, 201 N.E.3d at 113.

The appellate court rejected Soto's claims and affirmed the convictions. *Id.* at 122. Soto then filed a petition for leave to appeal to the Illinois Supreme Court, raising many of the same claims. R. 15-2, State Resp. Exh. 2. The Illinois Supreme Court rejected Soto's petition in May 2022. *People v. Soto*, 193 N.E.3d 37 (Ill. 2022). After that, Soto did not file a post-conviction petition or lodge any other collateral attack against the state court proceedings. *See* Habeas Pet. at 5.

### 4. Federal Habeas Petition

In 2022, Soto timely filed his 28 U.S.C. § 2254 petition for writ of habeas corpus in this Court. *See* Habeas Pet. This time, Soto raises a total of 12 claims, including the nine raised in the Illinois Appellate Court:

- <u>Ground 1</u>: The evidence failed to prove Soto's guilt beyond a reasonable doubt;
- <u>Ground 2</u>: The prosecution failed to disclose that T.L.'s mother had a prior felony conviction less than ten years old;
- <u>Ground 3</u>: The prosecution failed to disclose that T.L. would be unable to visually identify Soto in court at trial;

6

- <u>Ground 4</u>: The trial court erred when it denied Soto's motion to prevent T.L. from attempting to identify Soto in court at trial;
- <u>Ground 5</u>: The trial court erred when it did not dismiss Soto's charges for a six-year preindictment delay;
- <u>Ground 6</u>: T.L.'s testimony that Soto photographed her during the assault violated the Due Process Clause of the Fourteenth Amendment;
- <u>Ground 7</u>: The trial court's denial of Soto's motion to take an evidence deposition of the physician who examined T.L. months after the assaulted violated the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment;
- <u>Ground 8</u>: The admission of T.L's prior videotaped statement violated the Confrontation Clause;
- <u>Ground 9</u>: Cumulative error;
- <u>Ground 10</u>: The trial court lacked jurisdiction because the prosecution failed to prove that the assault occurred in Illinois;
- <u>Ground 11</u>: The Illinois Appellate Court violated the Equal Protection Clause of the Fourteenth Amendment when it allowed the State to file an untimely appellee's brief; and
- <u>Ground 12</u>: The Illinois Appellate Court violated the Due Process Clause of the Fourteenth Amendment when it held that the evidence was sufficient because it ignored three factual errors made by the trial court or repeated the errors itself.

Habeas Pet. at 6–7. The Court addresses each of these claims in turn.

## II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Cheeks v. Gaetz*, 571 F.3d

680, 685 (7th Cir. 2009) (cleaned up).[4] A habeas petitioner must fully and fairly present his federal claims through one complete round of state appellate review before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner has failed to properly assert particular federal claims at each level of state review, then those claims are procedurally defaulted, and federal habeas review of those claims is precluded.[5] *See McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013); *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). A habeas petitioner may overcome procedural default, however, either by demonstrating cause for the default and actual prejudice from the default, or by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court has defined "cause" sufficient to excuse procedural default as "some objective factor external to the defense" that prevents the petitioner from raising his constitutional claims in state court. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). And the Supreme Court has explained that a fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478,

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[5]A petitioner may also procedurally default their claim when the petitioner fails to raise his federal claims in compliance with relevant state procedural rules. *Cone v. Bell*, 556 U.S. 449, 456 (2009).

496 (1986). Thus, procedural default, although otherwise a bar to federal habeas review, may be excused in certain circumstances.

If the petitioner successfully runs the procedural-default gauntlet for a particular claim, then a federal court can at least consider the merits of the claim. But under AEDPA, a federal court may not grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). But even if a federal court independently concludes that the relevant state-court decision applied clearly established federal law erroneously, still the writ does not necessarily issue; rather, the state court's application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). "This is a difficult standard to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

Finally, a state court's factual determinations must also be evaluated against the unreasonableness standard. 28 U.S.C. § 2254(d)(2). The state court's factual findings are presumed correct, 28 U.S.C.§ 2254(e)(1), so merely asserting that the state court committed error is not enough to overturn factual findings, *Ward v. Sternes*,

9

334 F.3d 696, 703–04 (7th Cir. 2003). Instead, the petitioner could show that the state court determined the facts despite clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Weaver v. Nicholson*, 892 F.3d 878, 881 (7th Cir. 2018). This kind of decision, by its terms, would be "so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable." *Ward*, 334 F.3d at 704 (cleaned up).

### III. Analysis

### A. Insufficient Evidence (Ground 1)

Soto first argues that the evidence presented to the jury was insufficient to support his convictions. Habeas Pet. at 8–31. Soto characterizes the guilty verdict as an unreasonable determination of the *facts* under 28 U.S.C. § 2254(d)(2). *Id.* at 8. But a claim of insufficient evidence presents, at bottom, a question of law—not a dispute over a finding of fact. This is because a court's review of jury verdicts is confined to asking whether, "in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (emphasis in original). Applying that legal standard is the extent of how the Due Process Clause operates to protect defendants: "this inquiry does not require a court to ask whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318–19 (cleaned up) (emphasis in original). So the claim of insufficient evidence really asks whether the Illinois courts answered a question law contrary to—or as an unreasonable application of—clearly established federal law under 28 U.S.C. § 2254(d)(1). In any event,

10

not matter how viewed—whether as a determination of law or a finding of fact—the state courts did not err in rejecting the claim of insufficient evidence.

As just noted, to determine whether evidence is sufficient to support a criminal conviction, the applicable standard (on direct review) is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319 (emphasis in original). On direct appeal, the Illinois Appellate Court stated that it had reviewed the trial "evidence in the light most favorable to the State" to determine whether "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Soto*, 201 N.E.3d at 118 (citing *People v. Jackson*, 162 N.E.3d 223, 240 (Ill. 2020)). That is the correct standard under which to evaluate a guilty verdict on direct appeal, so the Illinois Appellate Court's decision was not contrary to clearly established federal law. True, in setting forth the standard, the appellate court cited an Illinois state case and did cite a governing U.S. Supreme Court case. But § 2254(d)(1) does not require a state court to cite a federal case, as long as the reasoning and result of the state court case is consistent with federal law. *Richardson v. Lemke*, 745 F.3d 258, 276 (7th Cir. 2014) (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)). Here, the standard articulated by the Illinois Appellate Court is consistent with the federal constitutional standard. Even more, *Jackson* (the Illinois state case cited by the appellate court) itself relies on federal law (indeed, the seminal Supreme Court case on the issue, coincidentally also *Jackson*) when laying out the test in its analysis. *Jackson*, 162 N.E.3d at 239 (citing *Jackson v. Virginia*, 443 U.S.

11

307, 319 (1979)). In that way, the state appellate court's decision was not contrary to clearly established federal law.

Soto also falls short on showing that the Illinois Appellate Court's decision was based on an unreasonable application of federal law. Soto bears a high burden on habeas review. "The relevant question is *not* whether [the federal court] disagree[s] with the state court's resolution of the case …. Instead, [the federal court] must find the decision not just wrong, but well outside the bounds of permissible outcomes." *Smith v. Brookhart*, 996 F.3d 402, 413 (7th Cir. 2021) (emphasis in original). Put another way, Soto must demonstrate that the evidence presented at trial was "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). The record evidence does not support Soto's argument.

To start, at the time of the alleged assault, predatory criminal sexual assault of a child under Illinois law required evidence showing that the defendant (1) when he was 17 years of age or older, (2) committed an act of "sexual penetration: (3) with a child under the age of 13. 720 ILCS 5/11-1/.40(a)(1) (2012). The Illinois Appellate Court explained that, "taking the evidence in the light most favorable to the State," "a reasonable trier of fact could find [Soto] guilty of the predatory criminal sexual assault and aggravated criminal sexual abuse of T.L." *Soto*, 201 N.E.3d at 119. The court considered T.L.'s testimony describing the alleged assault and J.S.'s testimony describing a similar assault by Soto. *Id.* Considering the direct testimony of these two victim-witnesses, the record is not "devoid of evidence from which a reasonable jury" could find that Soto is guilty beyond a reasonable doubt. *United States v. Hills*, 618

F.3d 619, 637 (7th Cir. 2010); *Soto*, 201 N.E.3d at 118–19 (citing *People v. Harris*, 120 N.E.3d 900, 907 (Ill. 2018)).

Soto also contends that the state appellate court unreasonably found that there was sufficient evidence to prove that Soto was the person who assaulted T.L. Habeas Pet. at 10–13. But on habeas review, the question is not whether a federal court in its own independent judgment would have arrived at the same factual finding. Instead, the question is whether the Illinois Appellate Court unreasonably concluded that there was sufficient evidence of identity. *See Brookhart*, 996 F.3d at 413 (explaining that the "objectively unreasonable" standard under *Jackson* requires that "no evidence from which a jury could find guilt beyond a reasonable doubt"). For this element, too, the evidence presented at trial more than clears that bar. T.L. testified that the man who attacked her was a security guard named Charlie and that he was a chubby, balding Hispanic man with an apartment near Humboldt Park. *Soto*, 201 N.E.3d at 106. Soto (whose first name is Charles) fit this description. *Id.* at 119. Soto argues that no witness made an in-court identification of him as the perpetrator, but no U.S. Supreme Court holds that Due Process requires that as a necessary precondition of a guilty verdict in all cases. In sum, the Illinois Appellate Court neither violated clearly established law nor unreasonably applied the law to the record evidence.

## B. Failure to Disclose Felony Conviction (Ground 2)

Soto next argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that T.L.'s mother had a prior felony conviction for identity theft

that was less than 10 years old. Habeas Pet. at 32–39. This claim is without merit. A petitioner may establish a violation of his due process rights under *Brady v. Maryland* (or at least the witness-impeachment version of it, *see Giglio v. United States*, 405 U.S. 150, 154 (1972)), when he demonstrates that the State suppressed evidence favorable to the accused that is material to the accused's guilt or punishment. 373 U.S. at 87. Evidence is material if there is a reasonable probability that the result of the proceedings would have been different if the evidence had been disclosed to the defendant. *United States v. Bagley*, 473 U.S. 667, 682 (1985). On habeas review, then, a district court can only find such a decision an unreasonable application of *Brady* if the last reasoned state court decision erroneously found that the evidence would not have affected the outcome of the trial.

Here, Soto did not demonstrate that the state court's decision that the failure to disclose T.L.'s mother's prior felony conviction was contrary to clearly established federal law. Soto appealed the State's withholding of T.L.'s mother's prior felony conviction to the Illinois Appellate Court as a violation of his *Brady* rights. The Illinois Appellate Court addressed this claim by citing to and applying *Brady*. *Soto*, 201 N.E.3d at 112, 121. So the correct legal standard was applied.

More to the point, the state court certainly did not unreasonably apply *Brady*. The state court reasonably concluded that the failure to disclose the conviction, even if incorrect, was not prejudicial. First, T.L.'s mother did not even testify at trial. So there was no testimony to impeach. Evidence of the prior conviction was thus irrelevant and immaterial to the outcome of Soto's trial.

14

Soto argues that, even though T.L.'s mother did not testify, he could have used the prior felony conviction to support his overall defense theme that T.L.'s mother was a deceitful person and that she encouraged T.L. to lie to the police, thereby discrediting T.L.'s testimony. Habeas Pet. at 36–37. But the Illinois Appellate Court reasonably concluded that the defense had "ample opportunity" to challenge T.L.'s mother role in reporting Soto. *Soto*, 201 N.E.3d at 121. At trial, Soto's counsel explained to the jury "[o]bviously there is an influence here going on from mom," who "is a homeless heroin addict. So that I think you all can reasonably infer that heroin addicts do desperate things and if you're homeless and without money, that you lie, cheat and beg, borrow and steal."R. 9-3, Pet.'s State Court Record at R. 665–66 . The jury did not buy this theory. The Illinois Appellate Court also reasonably explained that by the time of trial, T.L.'s mother "had no influence over T.L. as she had not been raising her or even had a relationship with her since 2012." *Soto*, 201 N.E.3d at 121. Given the reasonableness of the appellate court's application of *Brady*, there is no basis for habeas relief on this claim.

### C. Failure to Disclose T.L.'s Inability to Identify Soto (Ground 3)

Soto next argues that the State committed a second *Brady* violation when the prosecutors failed to disclose that T.L. would be unable to identify Soto in court before trial. This claim is defaulted and, anyway, lacks merit.

First, Soto did not present this claim in his petition for leave to appeal to the Illinois Supreme Court, so this claim is procedurally defaulted. State Resp. Exh. 2. To avoid default, Soto was required to raise this claim through "one complete round

of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). His habeas petition fails to demonstrate cause and prejudice, so this default cannot be excused.

Even if Soto had not procedurally defaulted this claim, it would have lacked merit. The state appellate court reasonably concluded that the State did not know— either before the trial or even during it—that T.L. would be unable to identify Soto in court. *Soto*, 201 N.E.3d at 120–21. Soto thus failed to establish that the State *suppressed* the purported evidence. *Bagley*, 473 U.S. at 682. Also, Soto again fails to demonstrate how the suppression of this evidence—had been known to the State— prejudiced the outcome of his trial. The jury heard from T.L. during trial that she could not identify Soto in the courtroom, but still found Soto guilty based on the evidence before it. *Soto*, 201 N.E.3d at 121. Based on this finding, and no evidence to the contrary, the state appellate court did not unreasonably apply *Brady*.[6]

### D. Attempted In-Court Identification of Soto (Ground 4)

Soto argues that the trial court's denial of his motion *in limine* to exclude any attempted in-court identification of Soto violated the principles established in *Neil v. Biggers*, 409 U.S. 188 (1972). Habeas Pet. at 40. Soto failed to raise this claim in his

---

[6]To the extent Soto is arguing that the factual determination that the state appellate court made is unreasonable (and not how the state court applied the law), this argument is more appropriate brought under § 2254(d)(2), but fails too because Soto did not satisfy that show that standard. In any event, because Soto raised this argument under § 2254(d)(1), any argument under § 2254(d)(2) is forfeited. *Hopkins v. Bd. of Ed. of City of Chicago*, 73 F.Supp.3d 954, 983 n.8 (N.D. Ill. November 14, 2014) ("Arguments not raised in an opening brief are deemed forfeited.").

petition for leave to appeal to the Illinois Supreme Court, so it is defaulted. State Resp. Exh. 2.

Even if this claim was not defaulted, it lacks merit. *Neil v. Biggers* concerns the reliability of in-court identifications that follow impermissibly suggestive *pre-trial* identifications, and not, as Soto argues, the possibility of an in-court identification happening several years after the alleged crime. *See Cossel v. Miller*, 229 F.3d 649, 655 (7th Cir. 2000) (citing *Biggers*, 409 U.S. at 199–200)). In *Neil v. Biggers*, the Supreme Court established the five criteria necessary for evaluating whether a pretrial identification is reliable (and thus admissible). Courts must assess (1) whether the witness had the opportunity to view the criminal at the time of the crime; (2) the degree of attention the witness paid to the accused at the time of the crime; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty at the time of identification; and (5) the length of time between the crime and the identification. *Biggers*, 409 U.S. at 199–200; *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (applying the *Biggers* factors). But nothing in *Biggers* requires (explicitly or implicitly) an in-court identification of the accused be made by the victim. Nor does Soto direct this Court to any cases holding that *Biggers* requires an in-court identification to establish guilt beyond a reasonable doubt. Lastly, Soto does not offer a U.S. Supreme Court case that prohibits an in-court identification eight years after

the alleged crime took place. All in all, the trial court did not err, for purposes of habeas review, in refusing to exclude an in-court identification before the trial began.[7]

### E. Six-Year Pre-Indictment Delay (Ground 5)

Next, Soto argues that the six-year delay between the time that T.L. reported the sexual assault and the issuance of the indictment was unconstitutionally excessive and violated due process. Habeas Pet. at 41–48. This claim lacks merit. Statutes of limitations—and not unstated rules embedded in the Constitution—are "the primary guarantee[] against bringing overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (cleaned up). Although the Due Process Clause can be offended by excessive preindictment delay, due process plays only a limited role in protecting against oppressive delay. *Id.* To prove that the delay here is oppressive, Soto must have demonstrated to the Illinois Appellate Court "that the delay caused actual and substantial prejudice to his right to a fair trial." *United States v. Hagler*, 700 F.3d 1091, 1099 (7th Cir. 2012). If he made this showing, then the government would have been required to show that the purpose of the delay was not to gain an advantage or for another impermissible reason. *Id.*

The Illinois Appellate Court's decision was not contrary to clearly established federal law governing pre-indictment delay. The appeals court set forth the correct legal principles and applied those principles when it determined that the delay Soto experienced did not prejudice his trial. *Soto*, 201 N.E.3d at 113–14.

---

[7]It is worth noting that T.L. did not identify Soto in court, so even if there was error, any error was harmless. *Cossel*, 229 F.3d at 655.

18

In particular, the Illinois Appellate Court reviewed the evidence Soto pointed to supporting his argument and determined that the unavailability of certain evidence and witnesses did not prejudice his trial. *See United States v. Ashford*, 924 F.2d 1416, 1420 (7th Cir. 1991); *Soto*, 201 N.E.3d at 113–14. Soto argues that he was prejudiced because by the time of trial (1) he no longer had the cell phone that allegedly stored the pornographic photos of T.L. so he could not present the phone as evidence; (2) certain potentially exculpatory witnesses, such as T.L.'s father and other El Rincon employees were unavailable; (3) T.L.'s mother was unavailable to testify because of health issues; and (4) the delay caused similar issues in another, unrelated case that Soto was involved in. Habeas Pet. at 43–48. In response, the state court concluded that the fact that preindictment delay causes evidence or witnesses to be unavailable without more, does not establish actual prejudice. *Soto*, 201 N.E.3d at 114; *see also Lovasco*, 431 U.S. at 795–96. On the first point (the phone), the evidence of the photographs was excluded from the trial, so it had no relevance. More to the point, nothing in the record shows that the state trial court erred (much less acted unreasonably) in rejecting Soto's contention that the phone would have exculpated him; based on the record, the phone could have just as readily inculpated him. *Soto*, 201 N.E.3d at 114. The same factual premise is missing from the other contentions of prejudice. The Illinois Appellate Court concluded that the contentions were "speculative," including that the availability of T.L.'s father, clinic employees, and T.L.'s mother would have exculpated Soto. *Id.* Because Soto failed to present evidence or otherwise demonstrate how any one of these errors affected the outcome of his trial,

the Illinois Appellate Court reasonably rejected this claim. Like the Illinois Appellate Court, this Court does "not look favorably" on the six-year delay, *Soto*, 201 N.E.3d at 114, but the constraints of federal habeas review do not permit relief on this ground.

### F. T.L.'s Testimony on Photos (Ground 6)

Soto next claims that he was deprived of due process when T.L. testified at trial that Soto had taken photos of her, a topic that had been barred by the state trial court's motion *in limine* decision. Habeas Pet. at 48–50. This claim is defaulted and otherwise lacks merit.

This claim is defaulted because Soto failed to raise the *federal* nature of the claim at each level of state court review. State Resp. Exh. 2. In his petition for leave to appeal to the Illinois Supreme Court, Soto asserted that T.L.'s testimony about being photographed violated the trial court's motion *in limine*, but the argument did *not* reference the potential federal constitutional basis for the argument. *Id.* at 19–20. Argued this way, Soto only raised a state law issue—a violation of an evidentiary ruling—through one round of state court review. Now in federal court, Soto for the first time argues that the violation of the trial court's motion *in limine* violated his due process rights—a violation of a federal law. Habeas Pet. at 48–50. The claim is thus defaulted because he failed to alert the state court to the federal nature of the claim.[8] *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Baldwin v. Reese*, 541 U.S.

---

[8]The State argues that this claim is non-cognizable. It is true that if Soto re-asserted only the state law issue in this Court, the claim would be non-cognizable. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). But, because he raised the federal nature of the claim for the first time in his petition, his claim is cognizable—but defaulted.

27, 29 (2004) (holding that a petitioner must alert the court to the federal nature of the claim to "fairly present" his claim at each level of state court review).

Even if the claim were not defaulted, the claim would not succeed because any error was harmless. In response to a question on cross-examination on where she was sitting when she was assaulted, T.L. initially answered, "When I was sitting on the bed that is when he took a picture of my front part and then he put—so—he told me that—I'm sorry, can you repeat the question?" *Soto*, 201 N.E.3d at 107. The trial court immediately struck the answer *sua sponte* and told the jury to disregard it. *Id.* The State respected the motion *in limine* as well, neither directly eliciting any answers on the topic nor referencing the testimony during the remainder of the trial. Without any basis to think that the jury erroneously considered the testimony, the Court "presume[s] that the jury limited its consideration of the testimony in accordance with the court's instruction, and disregard[s]" T.L.'s testimony about the photograph. *United States v. Wantuch*, 525 F.3d 505, 516 (7th Cir. 2008); *see also Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987). Nowhere in his direct appeal nor on habeas review did Soto provide any evidence to show that the jury considered the fleeting testimony on the photograph. The state appellate court's decision holding that any error was harmless was thus not unreasonable or contrary to federal law.

### G. Exclusion of T.L.'s Prior Statement (Ground 7)

Several months after T.L. had been abused, she began living with a new foster mother. *Soto*, 201 N.E.3d at 100. T.L.'s new foster mother, as well as an employee of the Department of Children and Family Services, took T.L. to a physician for a

21

routine checkup. *Id*. The physician prepared a report, which stated in relevant part, "The patient presents with [Department of Children and Family Services] worker and forster [*sic*] mom for medical clearance. Mild cough and clear runny nose for one and a half week[s]. No fever. Feeding well 3 times a day. Child denies abuse." *Id*. at 100. Before trial Soto sought to admit that statement. *Id*. At the motion hearing, the prosecutors explained that the interview was part of the standard foster care review process and simply represented a statement that she was not *currently* being abused by her *new* foster family. *Id*. at 102. The trial court agreed and found that the statement was irrelevant to T.L.'s case and denied Soto the opportunity to take an evidence deposition. *Id*. The appellate court affirmed, agreeing that the report and testimony were irrelevant because the interview was unrelated to the case against Soto. *Id*. at 117.

Now, Soto argues that the denial of the motion for an evidence deposition violated his Sixth Amendment right to confront witnesses and his due process right to present a full defense. Habeas Pet. at 54. Both arguments are defaulted and lack merit. On default, Soto failed to raise the *federal* nature of the arguments against the exclusion of T.L.'s statement in the state appellate court, so the federal claims are now defaulted. In state court, Soto only asserted that the exclusion of the statement was "an abuse of discretion," without invoking a federal constitutional bases for the argument. State Resp. Exh. 2 at 21–22. The constitutional bases for his arguments were not raised until his habeas petition, so those claims are defaulted. *Baldwin*, 541 U.S. at 29.

The claims also lack merit. First, Soto misunderstands the function of the Confrontation Clause. The Confrontation Clause provides the accused the "right … to be confronted with the witnesses against him." U.S. Const. amend. VI. This means that testimonial statements made by a non-testifying witness may not be introduced against the defendants at his criminal trial, unless the witness is "unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 54 (2004). Soto interprets this right to mean that he is affirmatively owed the opportunity to depose any witnesses he chooses. There is no precedent for that view. His confrontation rights would be implicated only if T.L.'s statement to the physician was used *against* him at trial and the witnesses did not testify. Because the statement was not introduced at all, Soto's Confrontation Clause claim lacks merit.

Turning to the due process claim, Soto argues that the trial court's denial of his motion to take an evidence deposition of the physician prevented Soto from presenting a full defense at trial. Habeas Pet. at 54. But the Constitution does not grant defendants *carte blanche* to compel interviews or depositions of witnesses before trial. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (explaining that a defendant's right to present witnesses in his defense is conditioned on complying with rules of procedure and evidence). Habeas relief from a state court's evidentiary ruling is permissible only where the court's ruling prevented the petitioner from raising his defense or the decision is arbitrary or disproportionate to the evidentiary rule's purpose. *Horton v. Litscher*, 427 F.3d 498, 504 (7th Cir. 2005) (citing *Chambers*, 410 U.S. at

23

302–03)); *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Because the state trial court reasonably denied the evidence deposition of the physician as irrelevant, the court's ruling was not arbitrary, disproportionate, nor did it prevent Soto from raising a defense. The trial court's decision to disallow Soto from taking an evidence deposition did not violate his due process rights.

### H. Admission of Video Interview of T.L. (Ground 8)

Moving on, Soto challenges the admission of T.L.'s videotaped interview with the Child Advocacy Center in the week following her assault as violating his Sixth Amendment right under the Confrontation Clause. But Soto did not challenge the admission of the videotaped statement on *federal* law grounds in state court—he only challenged the videotape as inadmissible hearsay in violation of a *state* rule, 725 ILCS 5/115-10. Then in his petition for leave to appeal, Soto only mentioned that the video interview violated his Confrontation Clause rights in the *heading* of the pertinent subsection of the brief. State Resp. Exh. 2 at 23–24. He did not provide any additional authority or argument to support his claim. A fleeting reference to a federal constitutional basis in a brief's point-heading is insufficient presentment of the claim. Soto thus did not address the argument sufficiently to preserve it, so this claim is defaulted. *McDowell*, 737 F.3d at 482.

Even if Soto had not defaulted on this claim, it would have lacked merit. T.L. testified at trial and was available for cross-examination. *See Crawford*, 541 U.S. at 54. Soto thus have the opportunity to confront T.L. about the video interview. Because

T.L. could have been cross-examined on the videotaped statement, the admission of this evidence did not run afoul of the Confrontation Clause's protections.[9]

## I. Cumulative Error (Ground 9)

Soto next argues that the cumulative effect of the state court errors deprived Soto of his due process right to a fair trial. Habeas Pet. at 58. Soto did not raise any cumulative error argument based on due process in his petition for leave to appeal to the Illinois Appellate Court, so it is defaulted. State Exh. 2. In any event, because Soto has not shown that the state trial court committed error (as explained above), the overarching claim for cumulative error fails. *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001).

## J. Jurisdiction of the Trial Court (Ground 10)

Soto next contends that the State failed to prove the trial court had jurisdiction over the case because there was insufficient evidence to establish that the crime occurred in Illinois. Habeas Pet. at 59. This claim is barred from federal habeas review because the habeas petition argues this purely as an issue of *state* law, and fails to identify any federal constitutional basis for the argument. *Coleman*, 501 U.S. at 729. In any event, the Illinois Appellate Court applied Illinois law, which authorizes Illinois state courts to have jurisdiction over the prosecution of offenses that were committed "wholly or partly within" Illinois. 720 ILCS 5/1-5(a)(1). The state appellate

---

[9]In something of a reprise of the state court briefing, Soto raises related claims under Illinois law. Habeas Pet. at 54–58. He argues that the statements violated Illinois's hearsay law, 725 ILCS 5/115-10. Because these arguments are only based in state law, these claims are barred from federal habeas review. *Coleman*, 501 U.S. at 729.

court reviewed the trial evidence and affirmed that the State had readily established that the assault occurred in Illinois. *Soto*, 201 N.E.3d at 115. Trial testimony established that Soto lived on a street called Tripp near Humboldt Park, both of which are in Chicago, and the testimony of Soto's ex-wife and daughter were replete with references of Soto's home in Chicago. *Id.* The state trial court had jurisdiction.

### K. State Appellate Brief *Instanter* Filing (Ground 11)

Soto argues next that the Illinois Appellate Court somehow violated the Equal Protection Clause by granting the State's extension motion to file its appeals brief. During the direct appeal, the State missed the filing deadline for its response brief, and Soto moved to bar the State from filing its brief altogether and that Soto should receive a more deferential standard of review. Habeas Pet. at 62–64. Some 20 days after the missed filing deadline, the State filed an opposition to Soto's motion and then (on the same day) filed an instanter extension motion. R. 15-4, State Resp. Exh. 4.The appellate court denied Soto's motion and extended the State's deadline an additional month, and then later extended it another 10 days based on a second extension motion. R. 15-5, State Resp. Exh. 5. The State finally met the twice-extended deadline.

Now in federal court, Soto asserts that Illinois Supreme Court Rule 343(c) does not confer authority on the Appellate Court to grant an extension instanter, so state law required the appellate court to both prohibit the State from filing its untimely brief and to apply a more deferential standard of review to Soto's claims. Habeas Pet. at 62. In his view, the state appellate court's failure gives rise to a case of first

impression interpreting Illinois Supreme Court Rule 343(c) and a violation of the Equal Protection Clause because it "is inconceivable" that the state court would have allowed a defendant to file a brief so late. Habeas Pet. at 63.

The first part of Soto's argument—that granting the extension request violates Illinois Supreme Court Rule 343(c)—is premised on state law, so it is non-cognizable in federal court. *Coleman*, 501 U.S. at 729. The second part of Soto's argument—that the granted instanter motion violates equal protection—has several flaws. First, tacking on the federal equal protection ground to the argument that the motion violated Illinois Supreme Court Rule 343(c) does not transform the state law argument advanced in his habeas petition into an argument based in federal law. *Baldwin*, 541 U.S. at 29.

Second, even if Soto had sufficiently presented the federal basis of his claim in the habeas petition, the claim faces a more fundamental problem: Soto has not exhausted an equal protection claim in state court. Federal courts cannot grant a petition for habeas corpus "unless it appears that … the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," and promote principles of comity and federalism by giving he state courts the first "opportunity to pass upon the matter." *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

Here, both parties recognize that Soto did not argue in the state appellate court that extending the State's deadline violated the Equal Protection Clause. State Resp.

27

at 36. Soto also did not file any post-conviction motions in state court alleging errors that occurred after the trial record was developed. Because this claim arose during the state appeals process, the claim was developed outside of the trial record, and Soto has yet to raise it in state court. So this claim is unexhausted. Rather than send this claim back to the state court for review, however, this court will exercise its discretion to resolve the claim. *See* 28 U.S.C. § 2254(b)(2) (permitting federal courts to deny habeas claims on the merits even where the applicant failed to exhaust the available state court remedies).

The equal protection claim fails on the merits. The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Simply put, the Equal Protection Clause guarantees "that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A defendant alleging an equal protection violation "has the burden of proving the existence of purposeful discrimination." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (cleaned up). The defendant may do so by demonstrating "that the decisionmakers in *his* case acted with discriminatory purpose" which ultimately effected his case. *Id.* at 292–93 (emphasis in original). But "discretion is essential to the criminal justice process," so the defendant must come forward with "exceptionally clear proof" to prove that discretion has been abused. *Id.* at 297. In some circumstances, an equal protection claim may also be sustained if the criminal defendant

alleges that he has been irrationally singled out as a "class of one." *Engquist v. Oregon Dep't. of Agr.*, 553 U.S. 591, 601 (2008). Soto's argument fails under either theory.

The basis of Soto's argument—that it is "inconceivable" that a defendant would be allowed to file ultimately pleadings—does not adequately show an Equal Protection violation. The only support for this claim is his statement that "[a]ll state and federal appellate courts, at every level, routinely and frequently deny defendants' petitions, notices of appeal[,] and briefs which are untimely filed," so extending the State's deadline, by contrast, "constitutes a discriminatory, arbitrary and capricious denial of the equal rights of citizens in the State of Illinois." Habeas Pet. at 63. That is a breathtaking accusation, backed up by zero evidence.

The State's response brief further highlights the shortcomings of Soto's argument. Assuming Soto had presented evidence of intent to discriminate in his case, that evidence must have demonstrated a "stark" pattern of unequal treatment to be accepted as the only evidence of discriminatory intent. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). But the State offers examples of several cases where the Illinois Appellate Court allowed criminal defendants to file briefs, extension motions, and other pleadings instanter. State Resp. at 38; R. 15-6,State Resp. Exh. 6. Soto failed to address these examples in his reply brief. *See* R. 16, Pet. Reply. The State's unrebutted examples show that there is not a "stark" pattern of discrimination against criminal defendants filing instanter motions in Illinois state courts, dooming the equal protection claim.

Soto also fails to allege an equal protection violation based on a class-of-one theory. The class-of-one theory assumes that "like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). As the State explains, Soto does not argue that he is treated differently than other Illinois state criminal defendants. State Resp. at 39. Rather, Soto argues that the State is always allowed to file instanter briefs. *Id.* He does not provide any evidence or argument about how he is treated differently than other criminal defendants in Illinois—a claim that is necessary to establish a class-of-one theory of discrimination. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (explaining that a plaintiff alleging a class-of-one claim must establish that a state actor has intentionally treated him differently than others similarly situated). Under this theory, too, Soto's equal protection claim fails.

## L. Appellate Court Opinion (Ground 12)

Finally, Soto argues that the state appellate court violated his due process rights when it (1) allegedly failed to address Soto's arguments that the trial court made factual errors when it rejected evidence-sufficiency claims that were made in his post-trial motion; and (2) allegedly made the same factual errors when it denied evidence-sufficiency claim on appeal. Habeas Pet. at 64–65. This argument fails on the merits.

On the first version of the argument, there is no constitutional requirement that a state court address each of a party's arguments in the court's opinion, nor does

the Due Process Clause require that courts write about all of the arguments that litigants present. *Mainiero v. Jordan*, 105 F.3d 361, 365 n.7 (7th Cir. 1997) (explaining on federal habeas review that the state appellate court "does not need to address every argument, regardless of merit, urged by the appellate").

The second version of Soto's argument—that the state appellate court itself committed factual errors—also fails to justify habeas relief. Though Soto pressed this argument as an unreasonable application or view of the law under 28 U.S.C. § 2254(d)(1), the more accurate characterization of this argument is that the state court got the facts wrong, which is a claim under 28 U.S.C. § 2254(d)(2). Because Soto does not raise this argument as a § 2254(d)(2) claim, however, he forfeits arguments based on this provision. *Lass v. Wells*, 105 F.4th 932, 938 (7th Cir. 2024).

Even if Soto had not forfeited the argument under the § 2254(d)(2) framework, the evidence he presents on habeas review does not show that the state appellate court based its decision in an unreasonable determination of the facts. "A petitioner's challenge to a state court decision based on a factual determination under § 2254(d)(2) will not succeed unless the state court committed an 'unreasonable error.'" *Ben-Yisrayl v. Buss*, 540 F.3d 542, 549 (7th Cir. 2008). The federal district court must presume that "the state court's determination of fact is correct." 28 U.S.C. § 2254(e)(1); *Winfield v. Dorethy*, 956 F.3d 442, 452 (7th Cir. 2020). Soto can rebut this presumption only if he shows by clear and convincing evidence that the finding was unreasonable. *Pierce v. Vanihel*, 93 F.4th 1036, 1045 (7th Cir. 2024). "Even if reasonable minds reviewing the record might disagree about the finding in question,

on habeas review, that does not suffice to supersede the trial court's determination." *Id.* (cleaned up). Soto does not meet this high bar. As the State points out, Soto does not provide *evidence* to rebut the presumption that the trial court's findings are correct, but instead accuses the state appellate court of making factual errors it did not make. *See* Habeas Pet. at 64–65; State Resp. at 14–16. Because Soto did not meet his burden, so he is not entitled to habeas relief.

## IV. Certificate of Appealability

If Soto seeks to appeal the denial of the habeas petition, then he must first obtain a certificate of appealability. Under 28 U.S.C. § 2253, "an appeal may not be taken to the court of appeals from … the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the circuit justice or judge first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, "a petitioner must show that reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (cleaned up). For the reasons discussed above, Soto has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should be resolved differently or determine that Soto deserves encouragement to proceed further with his habeas claims. *See Rutledge v. United*

*States*, 230 F.3d 1041, 1047 (7th Cir. 2000). The state courts' decisions on all of Soto's claims were well within the deference owed to state courts under AEDPA. The Court thus declines to issue a certificate of appealability.

## V. Conclusion

In his habeas petition, Soto threw the kitchen sink at his convictions. Like most claims in kitchen-sink briefs, however, none of the multitude of claims have merit. The petition is denied and no certificate of appealability shall issue from this Court.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 19, 2025